[No. 9816.  Department Two.  May 7, 1912.]

CARLOS N. BOYNTON et al., *Appellants*, v. FRED JOHNSON
          et al., *Respondents.*[1]

EVIDENCE—ORAL EVIDENCE—INCOMPLETE WRITTEN CONTRACT. Where
a written agreement for subletting railroad contract work contained
nothing respecting advances, in an action between the parties for
advances made by plaintiff to defendants under an oral agreement,
in which the defendants also pleaded an oral agreement limiting
their liability for the advances to the contract price, oral evidence
as to the agreement between the parties is admissible, since it was
conceded that the written contract did not contain the entire agree-
ment.

EVIDENCE — ORAL EVIDENCE—WRITTEN CONTRACT—CONSTRUCTION—
FRAUD. In an action upon a contract subletting railroad construc-
tion work, in which defendants claimed fraud in misrepresenting
the "classification" or character of the work and the "haul" or
distance that the earth was to be moved, and that the contract had
been modified by a subsequent oral agreement whereby plaintiff was
to pay defendants for extra work in moving rock and cement gravel
instead of earth, and for the extra distance of over 1,000 feet, as an
overhaul, oral evidence is admissible as to the meaning of the words
"classification" and "haul" in the contract, and as to the character
of the work and distance the earth was to be moved.

SAME. The fact that plans and specifications were by reference
made a part of a subcontract for railroad construction work, does
not preclude oral evidence as to the character of the work to be
done, when the same was misrepresented to the defendants, who
were thereby prevented from seeing the plans and inspecting the
work.

Appeal from a judgment of the superior court for Spo-
kane county, Hinkle, J., entered July 7, 1911, upon the ver-
dict of a jury rendered in favor of the defendants, in an
action for money paid.  Affirmed.

*Cullen, Lee & Foster*, for appellants.

*Robertson & Miller* and *Gallagher, Smith & Mack*, for re-
spondents.

[1]Reported in 123 Pac. 522.

CROW, J.—This action was commenced by Carlos N. Boynton, Henry W. Church and Samuel A. McCoy, copartners as Boynton, Church & McCoy, and A. E. Grant, against Fred Johnson and Iver Paulson and the copartnership of Fred Johnson & Company, to recover advancements made to Fred Johnson & Company. The amended complaint alleged that, on July 8, 1910, A. E. Grant and Fred Johnson & Company, a copartnership then consisting of Fred Johnson, Iver Paulson and Charles Johnson, now deceased, entered into a written contract whereby Fred Johnson & Company, as subcontractors, agreed to do grading upon the line of the Northern Pacific Railway Company; that for work done under the contract Fred Johnson & Company were entitled to $20,-555.89, and that they were also entitled to $189.80 for extra work;

"(5) That in accordance with the understanding and agreement between said A. E. Grant and said defendants, the said A. E. Grant undertook and agreed to pay the labor bills and feed and merchandise bills for said work for the purpose of financing the defendants in the performance of said contract, and that said A. E. Grant and said other plaintiffs from time to time during the performance of said contract paid labor bills, feed and merchandise bills necessary to the performance of said contract by defendants in the sum of thirty-one thousand one hundred ninety-one and 40-100 ($31,191.40) dollars, making an excess payment on account of said contract over and above the amount earned by the defendants under the terms of said contract of ten thousand four hundred forty-five and 71-100 ($10,-445.71 dollars, which said last named sum the defendants now owe to the plaintiffs;"

that subsequent to July 8, 1910, A. E. Grant assigned an undivided one-half interest in his contract to Boynton, Church & McCoy, and that the defendants are indebted to plaintiffs in the sum of $10,445.71.

Werner Broberg, administrator of the estate of Charles Johnson, deceased, was joined as a party defendant, but demurred to the complaint and was dismissed from the action.

The defendant Iver Paulson was served with summons, but as his time for answer had not expired at the date of the trial, he made no personal appearance nor was he defaulted. Fred Johnson answered for himself and on behalf of the firm of Fred Johnson & Company; and in substance alleged, that on July 8, 1910, the plaintiff A. E. Grant and the firm of Fred Johnson & Company executed the following instrument:

"This agreement, made by and between A. E. Grant, of Spokane, Washington, party of the first part, and Fred Johnson, Charles Johnson and Iver Paulson, copartners as Fred Johnson & Co., party of the second part,

"Witnesseth: That for and in consideration of the price hereinafter specified to be paid by the first party to the second party, second party agrees to do all the grading on the proposed new double track work of the Northern Pacific Railway Company and line changes thereon between Northern Pacific bridge across the Spokane River and approximately at the place marked on the blue print of said work 'Mile 76' and the point eastward therefrom marked 'Mile 73,' said work to be begun immediately and completed within four (4) months from date, the work to be done in accordance with the plans and specifications of the Northern Pacific Railway Company and the contract between the Northern Pacific Railway Company and Boynton, Church & McCoy, principal contractors for said work. In consideration of the above, first party agrees to pay second party for said work at the rate of seventeen cents ($.17) per cubic yard, which includes haul and classification, and to pay the second party on the 20th of each succeeding month the total estimate of work done less 10% to be retained until completion. In witness whereof," etc.;

that A. E. Grant, as a subcontractor, had theretofore entered into a written contract with his coplaintiffs Boynton, Church & McCoy, which was neither shown nor truthfully explained to Johnson & Company; that A. E. Grant stated to Johnson & Company there would be no greater haul than one thousand feet; that the material to be moved would be loose dirt only, and that the work could be done for a profit at seventeen cents per yard; that Grant further agreed to

pay all necessary bills for labor, materials, and supplies, provided Johnson & Company would furnish an outfit or equipment to do the work; that he would not look to Johnson & Company for repayment, but if the work did not prove sufficiently remunerative would assume the losses himself; that Grant was making a profit on the work having theretofore contracted to do the same for twenty-five cents per yard, and that he collected $20,000 and more for defendants' work, which he has appropriated to his own use.

For a second affirmative defense, the defendant Fred Johnson, on behalf of himself and the firm of Fred Johnson & Company, further alleged that A. E. Grant did not disclose to Johnson & Company the terms of his contract with Boynton, Church & McCoy, nor the Northern Pacific Railway Company's plans and specifications for the work; that Johnson & Company had no knowledge thereof; that A. E. Grant assured them the work would require no greater haul than one thousand feet; that he also assured them the material to be moved was loose earth and could be easily and profitably handled with defendants' teams, scrapers, graders, picks and shovels, at the contract price of seventeen cents per cubic yard, and that he would see them through without loss; that defendants made no preliminary examination of the material to be moved, being prevented by Grant from so doing; that soon after the work was commenced a steam shovel was found to be necessary to move the material; that it was procured by defendants at Grant's instance and request; that it was placed by Grant more than three thousand feet from the grade; that the defendants were thereby required to move the material a distance of more than three thousand feet, and were induced so to do by the promise of Grant that he would pay them a reasonable price therefor; that the word "haul" when applied to earth means a haul of no more than one thousand feet; that all haul of more than one thousand feet would be an overhaul and should be paid for at one cent per hundred feet for each cubic yard; that the

material moved was not earth as represented, but was loose rock or cement gravel; that the reasonable price for doing the work and carrying the loose rock or cement gravel in excess of the contract price for carrying earth was at least $14,000, and that in addition thereto defendants were entitled to $20,000 for overhaul. Upon trial a verdict for $5,373.50 was returned in favor of the defendants, and the jury answered two interrogatories as follows:

"(1) Were the advances and payments made by Albert Grant to pay the pay roll and to provide necessary funds for carrying on the contract made with the understanding that the same should be payable out of the funds derived from the contract and not from any other source? Yes.

"(2) Was there loose rock and overhaul actually delivered to the grade by the defendants, and did the said Albert Grant agree to pay therefor a reasonable price? Yes."

From a final judgment entered upon the verdict in favor of Fred Johnson as surviving member of the firm of Johnson & Company, the plaintiffs have appealed.

Appellants present numerous assignments, in substance contending that the trial court erred, in admitting proof of oral negotiations leading up to the written contract, in admitting proof of subsequent statements between appellant Grant and respondents, in admitting proof of the character of the material that was moved by respondents; and in instructions given and refused. Their controlling contention seems to be that this action is predicated on a written contract, the execution of which is admitted, and that no evidence should have been received which tended to contradict or vary its terms. We do not understand that any oral evidence was admitted for that purpose. The only written contract that was executed is quoted above. Appellants are demanding judgment for advances made in pursuance of an oral agreement. There is not a word in the written contract mentioning or calling for such advances. The contract upon which this action is predicated, in part at least, is an oral one, and is pleaded in the fifth paragraph of the complaint.

Respondents also plead an oral contract under which they claim the appellant Grant agreed to look only to the proceeds of the work at seventeen cents per yard for repayment of advances made, and that if such proceeds were not sufficient for that purpose he was to assume the loss himself. That there was an oral agreement of some character seems to be conceded. Under these issues, oral evidence was properly admitted.

As to evidence admitted showing the character of material to be moved, the distance it was to be moved, and the meaning of the terms "haul" and "classification," we also conclude no error was committed. The respondents contend that the written contract was induced and procured by untruthful representations of the appellant Grant, upon which they relied; that he stated the only material to be moved was earth, which could be profitably handled with respondents' outfit or equipment; that appellant Grant took respondents to a point near the work, in his automobile; that he would not wait for them to examine the ground or the borrow pits from which the material was to be taken, but prevented them from doing so; that he represented there was nothing to move other than earth; that respondents relied upon his statements, but that when work was commenced they found they would be required to move loose rock and cement gravel which would cost from thirty-two to thirty-five cents per cubic yard, and that they thereupon complained to appellant Grant, who told them to go ahead and he would see that they were properly compensated and protected. This evidence tended to show, (1) that the execution of the written contract was procured by misrepresentations of Grant, and his action in preventing a personal inspection of the ground and the borrow pits, and (2) that later he made a new or modified oral contract by which he agreed to compensate respondents for the actual work they were required to do in moving the rock and cement gravel and in making the overhaul. Such evidence was properly admitted.

Appellants call attention to the fact that the contract provides for doing the work in accordance with plans and specifications of the Northern Pacific Railway Company, and the principal contract between it and Boynton, Church & McCoy, and insist that by reference such plans and specifications became a part of the written contract with respondents, and was binding upon them. Respondents, however, alleged that the plans, specifications, and principal contract were not shown to them, and that Grant misstated them, thereby prevailing upon respondents to contract with him at seventeen cents per cubic yard. Under this issue, oral evidence of which appellants now complain was competent, for while it may be true that the plans and specifications by reference became a part of the contract, yet if respondents never saw them and if appellant Grant misstated them and thereby induced respondents to contract with him, he was bound by the statements which he then made.

The evidence shows that respondents did the work, first using their own equipment consisting of teams, scrapers, graders, picks, and shovels; that later a steam shovel became necessary to move the material, which proved to be loose rock and cement gravel instead of earth; that appellants paid for the labor, supplies and materials; that respondents have not received one dollar of compensation for themselves, or for the use of their large and expensive equipment; and that appellants now claim that respondents are still indebted to them for more than $10,000. The evidence further shows that the character of the work was misrepresented; that instead of moving earth respondents were required to move loose rock and cement gravel at almost a double expense; that instead of making a haul of only one thousand yards, they were compelled to make an overhaul of three thousand yards or more, and that by a subsequent oral agreement appellant Grant agreed to compensate them therefor. The evidence was conflicting, but the verdict and the special findings

show that the jury credited that produced by respondents. We find no error in the record. The judgment is affirmed.

DUNBAR, C. J., ELLIS, and MORRIS, JJ., concur.