[No. 32341. Department One. February 16, 1954.]

STANLEY R. WEST *et al., Respondents,* v. HILDA M. JARVI, *Appellant,* J. R. HAWLEY *et al., Defendants,* PIONEER SAND & GRAVEL COMPANY, *Respondent.*[1]

[1]Reported in 266 P. (2d) 1040.

*Simmons & Yates*, for appellant.

*Pomeroy, Yothers, Luckerath & Dore*, for respondents West.

*Eli M. Paulson*, for respondent Pioneer Sand & Gravel Company.

HILL, J.—Hilda M. Jarvi entered into a contract with West Builders, a copartnership hereinafter referred to as West, for the construction of an addition to her rest home. Numerous differences arose between Mrs. Jarvi and West, some of major importance and some trivial except as they became cumulative. West finally refused to continue with the construction. Other builders were then employed by Mrs. Jarvi to complete the work.

This action was commenced by West to foreclose a building contractor's lien for $10,290. The heating and electrical contractors and Pioneer Sand & Gravel Company, a corporation, hereinafter called Pioneer, were joined as parties defendant because they had filed liens against the property. They filed cross-complaints seeking foreclosure of their respective liens. Mrs. Jarvi cross-complained against West for damages incurred by her as a result of its abandonment of the contract, including the sum she was compelled to expend to complete the contract and damages for her loss of income because of the failure of West to complete the addition within the time specified in the contract.

West was awarded judgment in the amount of $6,700.61, together with foreclosure of a contractor's lien in that amount, plus interest, costs, and $1,200 attorneys' fee, together with an additional $2,000 attorneys' fee in the event of an appeal to this court. Pioneer was granted judgment against West for $518.50, and its lien against appellant's property was foreclosed. It was denied costs and attorney's fee in the superior court, but was awarded a $250 attorney's fee in the event of an appeal to this court. Mrs. Jarvi was denied recovery on her cross-complaint. (The relief granted to the heating and electrical contractors is not here material, no appeal having been taken from the judgments in their favor.)

The formula adopted by the trial court to determine the amount of the recovery to which West was entitled was based upon the premise that the contract had been substantially completed by West. The judgment was based upon the contract price, $20,900, plus extras in the amount of $1,462.80 and the three per cent sales tax on the whole ($22,362.80), amounting to $670.86, making a total of $23,033.66. The following deductions were then made from that total: the payments by Mrs. Jarvi to West and its subcontractors, $14,996.98; the cost of finishing the work under the contract, $981; and certain additional credits to which Mrs. Jarvi was entitled totaling $355.07. The total amount thus credited to her was $16,333.05, leaving a balance due West of $6,700.61, for which amount judgment was entered.

Mrs. Jarvi appeals from those portions of the judgment which grant recovery and foreclosure of the lien to West and foreclosure of Pioneer's lien, and which deny her recovery on her cross-complaint. Twenty-two assignments of error are made: sixteen directed against the findings of fact, five against conclusions of law, and one in general terms, stating that the trial court erred in not dismissing the actions brought by West and Pioneer and in not granting appellant recovery upon her cross-complaint.

While appellant does not, as we understand her position, object to the formula applied by the trial court, she objects to any judgment in favor of West, and, if it is to have a judgment, she objects to the inclusion of and the amounts of various items in the list of extras, and to the exclusion of certain items or amounts for which she believes she is entitled to credit.

The major questions were: Did West substantially complete its contract? and, Did Mrs. Jarvi's attitude and conduct justify West's refusal to complete the contract? The trial court answered yes to both questions, and we cannot say that its findings on those ultimate and decisive facts are not supported by substantial evidence. It necessarily follows that Mrs. Jarvi was not entitled to recover on her cross-complaint against West because she and not West had breached the contract, and that West was entitled to recover against her the amount due on the contract, together with the value of such extras as were established, and to have its lien foreclosed. The major issues in her controversy with West having been decided adversely to her on the facts, there remain for consideration only her contentions with reference to those specific items which affect the amount of, but not the right to, a judgment and the foreclosure of West's lien.

On most of these items, as on the major issues, there is no issue of law. The trial court's findings are in almost every instance based upon substantial evidence. A discussion of that evidence would be of no interest and of no value to anyone except the litigants; consequently, except where there are issues of law and where the evidence does not

support the findings, no reference will be made to the items challenged.

Appellant urges that the holding of the trial court that West's liability for the cost of the heating system was limited to $2,000, was a modification of the written contract by parol testimony. Under the trial court's finding that the heating plans and specifications were not available to West when it submitted its bid or when the contract was signed, the statement by appellant's architect that the heating system would not cost more than $1,800 or $2,000 and that the bid might be submitted on that basis, would make $2,000 the limit chargeable against West for that item. This is not a case of modification of a contract, but of a bid and contract made and conditioned upon a representation by appellant's architect and binding upon her. *Boynton v. Johnson*, 68 Wash. 370, 123 Pac. 522 (1912); *Sando v. Kalberg*, 138 Wash. 247, 244 Pac. 576 (1926); *McGregor v. First Farmers'-Merchants' Bank & Trust Co.*, 180 Wash. 440, 40 P. (2d) 144 (1935), obiter.

Appellant urges that her agreement with the architect was such that he had only a very limited agency. Whatever may have been the limitations on the architect's authority as between appellant and himself, West, until it knew of such limitations, had a right to assume that the usual relationship existed between owner and architect. *Sando v. Kalberg, supra.*

One of the principal extra items claimed by West was for enlarging certain window openings and furnishing and installing larger windows. Appellant says that the windows had to be changed to conform to the requirements of RCW 74.32.100 [*cf.* Rem. Supp 1945, § 8358k] that in a "place of refuge" "Window space shall not be less than one-fifth of the floor space." The trial court was convinced that the windows as originally installed were in accordance with the plans and specifications prepared by the architect, and that West was entitled to be compensated as an extra for the changes ordered by appellant. The authorities cited to the effect that "laws governing citizens of a state are presumed to be incorporated into contracts made by them"

häve no application to the present situation. The contract as made was a perfectly lawful one. The statute in question was intended to regulate and govern the person who operates a "place of refuge"; it was not intended to regulate the person with whom he contracts to build it. While the law affects the uses to which the building may be put, it does not fix the rights between the owner and the builder. *Morse v. Maurer,* 35 Pa. Super. 196 (1908); *Meneice v. Camp Kadimah Co.,* 157 Pa. Super. 380, 43 A. (2d) 621 (1945). Whether the architect made a mistake for which he might be liable to appellant, is not before us.

█ Appellant cites another provision of RCW 74.32.100, to wit, "Floors and ceilings of all rooms and wards shall be of such type of material as to lend itself well to thorough and repeated cleansing," as authority for her insistence upon a putty-coat finish on the plaster rather than the sand finish which the contractor had planned to use. We find nothing in the statement of facts to indicate that this provision of the statute was brought to the attention of the trial court or that sand-finish plaster does not qualify under that statute, and so we agree with the trial court that the additional cost of a putty-coat finish was an extra.

On the issue of extras, it is conceded that items of $21.93 and $34.54 for windows should not have been included in the findings and judgment, and that a credit of $8.50 for a door which was replaced by a larger one should have been allowed appellant.

In addition to these items for a total of $64.97, we are satisfied that the amount of $50 for changing a partition in the breakfast room should not be charged against appellant. As we read the testimony, Stanley West conceded that this work may have been done in exchange for other work which was to be omitted. This would make a reduction of $114.97 in the amount allowed by the trial court for extras.

These deductions would necessitate a reduction of $11.50 in the ten per cent allowed for supervision and overhead in connection with the extras. The argument of appellant that no allowance should be made for supervision and overhead on the extras is without merit.

There is another credit, in the amount of $12.75, which West concedes appellant should have. Adding this amount to the other items just discussed, we get a total of $139.22, and the judgment against appellant should be reduced in that amount plus the sales tax of $4.18 thereon, making a total deduction of $143.40.

What appellant calls her "main quarrel" with the trial court's findings relative to the credits allowed her for work done in completing the contract after West had refused to do so, is that the trial court refused to accept her actual costs but instead accepted the estimates of Stanley West as to the cost of completion.

Had the failure to complete the contract been the fault of West, then appellant's actual cost of completion (assuming it to be reasonable) would be the measure of her damage; but here the shoe is on the other foot. The trial court found that the failure to complete the contract was appellant's fault. We are not concerned with computing her damages, and the only credit to which she is entitled on the contract price is the amount that West saved by not completing the work.

In Restatement, Contracts, § 346(2), it is stated that one of the alternative methods of measuring damages to a builder by the breach of a contract by the owner, which breach prevents completion, is

"(a) the entire contract price and compensation for unavoidable special harm that the defendant had reason to foresee when the contract was made, less instalments already paid and *the cost of completion that the builder can reasonably save by not completing the work.*" (Italics ours.)

Comment "g" following this section makes clear the reason why the cost of completion by the owner who has breached the contract is not a proper measure of recovery:

"*g.* In order to put the builder in as good a position as he would have been in had the contract been fully performed, it is necessary to give him the full contract price less the amount that he saves by reason of the other party's repudiation. The amount so saved is the cost of completion of the work; but this is less simple than it appears. It is the cost of completion by a reasonably prudent person in the

builder's own position that is to be deducted from the contract price, and not the amount that it would cost the defendant or third parties. He may have made advantageous subcontracts that will reduce his cost of completion; and they must be taken into consideration. If the builder has materials on hand as a result of his expenditure under the contract, the reasonable value of those materials is a part of the builder's cost of completion, so far as they would be used up in the process."

See *Gould v. McCormick*, 75 Wash. 61, 134 Pac. 676 (1913); *Di Luck v. Bradner Co.*, 111 Wash. 291, 190 Pac. 904 (1920).

We find no merit in appellant's "main quarrel" on the question of the credit to be allowed her for the completion of the building after West quit, nor in her objections to some of the specific items.

Appellant asserts that the testimony on one item relating to the lowering of a sewer line at a cost of $124.58 is "uncontroverted." We do not want to "quarrel" with appellant, but that is not the way we read the record. The $124.58 was for labor, tile, and other materials used to connect the sewer line to the public sewer system. There is abundant evidence that West had put in a connection with that sewer system.

Of one thing we are certain after going through the voluminous record (1,079 pages in the statement of facts, 114 exhibits offered and 111 admitted) and the sharply conflicting testimony, and that is that this was not an easy case to decide and we are glad that we did not have to determine the facts in the first instance. Practically every issue depends upon the trial court's determination as to who and what should be believed. As forceful (and persuasive in some respects) as the appellant's argument may be on certain factual issues, we find no basis on which to interfere with or change the findings of the trial court on that phase of the case beyond making the minor reductions heretofore referred to.

We turn now to appellant's assignments of error which raise the issue of whether Pioneer had a valid materialman's lien.

Pioneer supplied to West materials of a total value of $850.33 to be used in the construction of appellant's building. Delivery began October 28, 1949, and within five days thereafter Pioneer complied with RCW 60.04.020 [cf. Rem. Rev. Stat., § 1133] by notifying the owner of its intention to claim a lien. Materials valued at $331.83 were delivered prior to December 15, 1949, and on that date West made a payment of $69.60, leaving a balance of $262.23. The remainder of the material was delivered between December 15 and December 30, 1949. Pioneer had ninety days from the latter date in which to file a lien. RCW 60.04.060 [cf. Rem. Supp. 1949, § 1134].

On January 23, 1950, Pioneer mailed a notice to appellant, stating that $262.23 was due it for materials and that its lien rights would expire January 26, 1950. (The expiration date obviously was erroneous; and the amount was the balance due as of December 15, 1949.) No further payment being received, Pioneer filed its lien claim in the amount of $262.23 on January 26th. On the same date, Pioneer sent appellant a letter advising her that the lien had been filed and that the amount of the account was $262.23 plus a filing cost of $5.90, but that the extra charge would be canceled if she paid the $262.23 within thirty days. This she did, and Pioneer executed a release of the lien.

Pioneer later discovered the error, and on March 30, 1950, within the ninety-day period following the last delivery of material, it filed a second claim of lien, this being for the amount still due, $518.50.

Appellant's position is that Pioneer notified her that it was furnishing materials to be used on her property and that a lien might be claimed, that it did claim a lien and it discharged that lien, and that the force and effect of the notice that a lien might be claimed was then spent.

Pioneer's position is that when it mailed the notice to appellant on November 2, 1949, it fulfilled the requirement of RCW 60.04.020 that notice be given the owner within five days after delivery was commenced; that when subsequent deliveries were made, no further notice was necessary; that the deliveries were commenced October 28, 1949, and ended

December 30, 1949, all on the same premises, on the same job, ordered by the same contractor, and for the same owner; and that, on discovering its error in filing the first lien and satisfying it, Pioneer had a right to file a second lien if it did so within ninety days of the last delivery of materials.

The trial court upheld the validity of the lien but denied Pioneer any attorney's fee for foreclosing the lien in the superior court.

No case with this fact pattern is cited by either party, and we find none. It is clear that, separate and apart from the requirement of RCW 60.04.020 that the owner be given notice within five days of commencement of delivery of materials, there would be no question as to the right to file a second lien, as the right to continue to file liens during the ninety-day period following the date of the last delivery seems to be generally recognized. Our leading case is *Lindley v. McGlauflin*, 58 Wash. 636, 109 Pac. 118 (1910).

While the argument advanced by appellant that if a lien is paid and satisfied the force of the five-day notice is spent, is novel and ingenious, we are satisfied that it is not sound. Such an interpretation would serve no good purpose, would thwart the legislative intent, and would enable property owners to defeat lien claims for materials and services of which they had received the benefit. The purpose of RCW 60.04.020 is to protect the owner against someone's supplying materials for use on his property without his knowledge or consent, and to protect him against paying the same bill twice. Before paying his contractor in full, the owner should satisfy himself that the materialmen have been paid.

It is conceded that a materialman might under certain circumstances estop himself from enforcing a lien filed after an earlier lien had been satisfied. For instance, Pioneer concedes that if appellant had paid the contractor in full, relying upon the letter she had received from Pioneer, the latter should be estopped to foreclose its lien because she would have relied, to her damage, upon an error made by it. However, there is no basis for a claim of estoppel here. No payments were made to the contractor in reliance on Pioneer's letter and the satisfaction of the lien.

■ Stated briefly, our holding on this point is: The filing of a lien by a materialman for less than the amount due, and the satisfaction of that lien, do not affect the force and effect of the notice given in conformity with RCW 60-.04.020, and a second lien covering the amount still due will be enforced if filed within the statutory period following the last delivery of materials, in the absence of circumstances constituting an estoppel.

■ While appellant assigns error because West and Pioneer are awarded attorneys' fees in the event of an appeal, the former in the amount of $2,000 and the latter in the amount of $250, the right of the trial court to fix attorneys' fees on an appeal of a lien foreclosure is not open to question. RCW 60.04.130 [cf. Rem. Rev. Stat., § 1141]; *Franklin v. Fischer*, 34 Wn. (2d) 342, 208 P. (2d) 902 (1949); *Haugen v. Raupach*, 43 Wn. (2d) 147, 260 P. (2d) 340 (1953). However, the $2,000 fee allowed the attorneys for West is excessive. They were allowed $1,200 for their services in the superior court, and the additional $2,000 allowed on this appeal makes $3,200 in fees on the foreclosure of a lien for $6,557.21.

This appeal involved no difficult questions of law. The important issue was whether there was substantial evidence to sustain the findings of the trial court. We are satisfied that the preparation for trial and the trial itself took more time, effort, and professional ability on the part of the attorneys representing West than was required in the presentation of this appeal, and that their fees thereon should not exceed the amount allowed in the superior court. We therefore reduce the $2,000 attorneys' fee in this court to $1,200.

■ The judgment appealed from is affirmed, except that it is directed that the judgment in favor of West against appellant be reduced by $143.40. The major portion of that reduction could have been obtained without an appeal, and appellant's principal contentions on this appeal have been decided adversely to her; therefore, both respondents will recover their costs, their attorneys' fees for services in this appeal to be $1,200 for West and $250 for Pioneer.

GRADY, C. J., MALLERY, WEAVER, and OLSON, JJ., concur.