1999 ME 33

JOHN W. GOODWIN, INC.

v.

Edward A. FOX et al.

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 28, 1998.
Decided Feb. 16, 1999.

Sandra Hylander Collier, Ellsworth, for plaintiff.

Brett D. Baber, Robert E. Sutcliffe, Rudman & Winchell, LLC, Bangor, for defendant.

Before WATHEN, C.J., and CLIFFORD, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Edward A. Fox appeals from a judgment entered in the Superior Court (Hancock County, *Marsano, J.*) in favor of John W. Goodwin, Inc., contending that Goodwin, a subcontractor, failed to join an indispensable party, the general contractor; Fox, the owner, did not consent to the costs of Goodwin's labor and materials beyond the prices set forth in the general contract; and the court erred in calculating the judgment awarded to Goodwin. We affirm the judgment of the Superior Court.

[¶ 2] Fox hired R.H. Campbell, Inc. to build a house on Fox's property in Cape Rosier. Campbell hired Goodwin as a subcontractor for concrete and masonry. Campbell submitted monthly applications for payments to William Sepe, Fox's architect and agent, who compared the application for payment with the work performed, and after approving the application, sent it on to Fox for payment. Fox was required to make payment to Campbell within ten days and was authorized to withhold five percent of each payment as a retainage.

[¶ 3] Campbell paid Goodwin during the course of construction, and Goodwin provided lien waivers as it received payments. On December 12, 1990, Goodwin signed a lien waiver indicating to Campbell and Fox that it had been paid in full for all work billed through that date.

[¶ 4] After December 12, 1990, Goodwin submitted four invoices to Campbell for work performed thereafter. Sepe testified that, in accordance with the billing procedure set forth in the general contract, he never saw Goodwin's invoices to Campbell. Sepe admitted, however, that Goodwin was working actively on the site from December 1990 to May 1991. Fox paid Campbell for work invoiced through March 15, 1991, but Campbell did not pay Goodwin.

[¶ 5] On May 15, 1991, Campbell walked off the job claiming that Fox had failed to provide timely progress payments. Because Campbell walked off the job, Fox refused to pay Campbell's last application for payment. All construction work on Fox's house stopped. On May 17, 1991, Goodwin recorded a mechanic's lien against Fox's property pursuant to 10 M.R.S.A. §§ 3251–3269 (1997 & Supp.1998).

[¶ 6] Goodwin supported its demand for $38,383 with copies of invoices submitted to Campbell after December 12, 1990. The invoices are inconsistent with the applications for payment submitted by Campbell to Fox during the same period. For example, Goodwin submitted invoices totaling $37,411 to Campbell. By contrast, during this period Campbell's application for payment to Fox listed costs of only $2,248 attributable to the concrete and masonry components of the total contract.

[¶ 7] After Campbell walked off the job, Goodwin refused to complete the masonry work because Fox would not honor its claim against Campbell. Fox hired another subcontractor to finish the masonry. Fox testified that his estimate of the total cost overrun attributable to Campbell's failure to complete the job was $200,000.

[¶ 8] Goodwin filed a complaint against Fox in September 1991. In March 1992, Goodwin moved to amend its complaint to add Campbell as a defendant. Fox opposed the motion and moved for a summary judgment because Goodwin originally failed to join Campbell as an indispensable party. The court granted Fox's motion, and Goodwin appealed. We held that Campbell was, indeed, an indispensable party and that the court abused its discretion when it denied Goodwin's motion to amend. *See John W. Goodwin, Inc. v. Fox,* 642 A.2d 1339, 1341 (Me.1994).

[¶ 9] While the case was on appeal, Goodwin brought a separate action against Campbell, obtaining a judgment for $38,383 in February 1994. The judgment remains unsatisfied because Campbell is insolvent.

[¶ 10] After this Court's decision, Goodwin filed an amended complaint in June 1995, naming Campbell and Fox as defendants. At the time Goodwin brought the complaint. Campbell's corporate status was suspended. In July 1995, Goodwin served Campbell with the amended complaint, but Campbell never filed an answer.[1]

[¶ 11] After a bench trial in October 1997, the court concluded that Goodwin performed services and contributed materials to Fox equal to the claimed $38,383, and that Fox consented to these services and materials. In addition, the court concluded that the retainage held by Fox was the limit of Fox's exposure to Goodwin's lien. Fox appealed.

1. Campbell never participated in the case, Fox never filed any cross-claims against Campbell, and we take judicial notice that Goodwin's claims against Campbell were resolved in the separate proceeding.

## I. FAILURE TO JOIN AN INDISPENSABLE PARTY

[¶ 12] Fox argues that Goodwin's original failure to join Campbell as an indispensable party may not be subsequently remedied because the suspension of Campbell's corporate status prevents Goodwin from joining Campbell, and Goodwin is also barred by res judicata from bringing another claim against Campbell. We disagree.

[¶ 13] Goodwin did not fail to join Campbell. First, contrary to Fox's contention, a suspended corporation may be sued. *See DiPietro v. Boynton,* 628 A.2d 1019, 1021–22 (Me.1993) (corporation's claims not dismissed on basis of suspended corporate status when corporate powers reinstated before defendant's motion to dismiss); *see also* 13–A M.R.S.A. §§ 1101, 1122 (1981) (corporation's capacity to be sued ends two years after formal dissolution). Second, Campbell never raised the defense of res judicata, and if Fox can assert the defense on Campbell's behalf, he failed to do so in the Superior Court. *See* M.R. Civ. P. 8(c) (party must set forth res judicata as an affirmative defense); *Reed v. Tracy,* 435 A.2d 745, 746 (Me.1981) (defense of res judicata waived when it is not raised by the pleadings). Therefore, Goodwin satisfied its obligation to join Campbell as an indispensable party by serving Campbell with the amended complaint.

## II. CONSENT TO LABOR AND MATERIALS

[¶ 14] Fox argues that his consent was limited to the prices set forth in the general contract attributable to masonry and concrete. We disagree.

[¶ 15] In order for Goodwin to assert a mechanic's lien on Fox's property. Goodwin must either have a contract with or the consent of Fox. 10 M.R.S.A. § 3251 (Supp.1998).[2] Because Goodwin did not con-

2. Title 10 M.R.S.A. § 3251 provides in relevant part:
    Whoever performs labor or furnishes labor or materials ... or performs services ... in erecting, altering, moving, or repairing a house ... by virtue of a contract with or by consent of the owner, has a lien thereon and on the land

tract with Fox, Goodwin had to demonstrate that Fox consented to Goodwin's labor and materials. To establish an owner's consent, a subcontractor must prove (1) knowledge on the part of the owner of the nature and extent of the work being performed on the premises, and (2) conduct on the part of the owner justifying the expectation and belief on the part of the subcontractor that the owner had consented. *See Carey v. Boulette*, 158 Me. 204, 213, 182 A.2d 473, 478 (1962). The mechanic's lien law will be "construed and applied liberally 'to further [its] equity and efficacy, when it is clear that the lien has been honestly earned.'" *John W. Goodwin, Inc.*, 642 A.2d at 1341 (quoting *Twin Island Dev. Corp. v. Winchester*, 512 A.2d 319, 323 (Me.1986)). The court's determination that an owner consented pursuant to the mechanic's lien law is reviewed for clear error. *See Parker–Danner Co. v. Nickerson*, 554 A.2d 1193, 1194–95 (Me.1989).

▪ [¶ 16] The court was not clearly erroneous when it found that Fox consented to Goodwin's labor and materials. Fox knew the scope and extent of Goodwin's work because his agent and architect, Sepe, oversaw and directed the construction. *See id.* (architect as owner's agent consents on behalf of owner); *cf. Carey*, 158 Me. at 213, 182 A.2d at 478 (no consent when contractor made extensive alterations to other areas of apartment building without informing owner and without owner's knowledge). The court's finding that Fox consented to Goodwin's work is supported by testimony by Sepe and

Fox that they knew Goodwin was working on the site. Consequently, the court did not commit clear error.

## III. "DOUBLE PAYMENT" DEFENSE

▪ [¶ 17] When a person who has furnished labor, material, or services without a contract with a homeowner seeks enforcement of his lien, the mechanic's lien law provides a "double payment" defense to the homeowner. *See* 10 M.R.S.A. § 3255(3) (1997);[3] *Biette v. Scott Dugas Trucking & Excavating, Inc.*, 676 A.2d 490, 496 (Me. 1996). After the homeowner receives notice of the mechanic's lien, the lien may be enforced against the property affected only to the extent of the "balance due" to the person with whom the homeowner has directly contracted. *See* 10 M.R.S.A. § 3255(3) (1997). The court determines whether there is a balance due by considering the work done less the amount withheld for work not performed in accordance with the contract. *See Biette*, 676 A.2d at 496; *Pond Cove Millwork Co. v. Steeves*, 598 A.2d 1181, 1182 (Me.1991); *see also* 5 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 1094, at 510–12 (1964) (discussing contractual damages in favor of contractor for breach by owner). The amount of the balance due is a question of fact that we review for clear error. *See Biette*, 676 A.2d at 496.

▪ [¶ 18] The court did not err when it found that the retainage of $59,371 was available to satisfy the Goodwin lien.[4] First,

on which it stands and on any interest such owner has in the same, to secure payment thereof, with costs....

**3.** Title 10 M.R.S.A. § 3255(3) provides in relevant part:

If the labor, materials or services were not performed or furnished by a contract with the owner of the property affected, the lien ... may only be enforced against the property affected to the extent of the balance due to the person with whom the owner has directly contracted to perform or furnish the labor, materials and services on which that lien claim is based. The defense established by this subsection shall only be available with respect to sums paid by the owner to the person with whom the owner has directly contracted where payment was made prior to commencement of

an action to enforce such lien by the person performing or furnishing labor, materials or services without a contract with the owner .... In no case shall the total amount due from the owner to those performing or furnishing labor, materials or services without a contract with the owner exceed the balance due from the owner to the person with whom he has directly contracted at the time of service of process on the owner in a lien action or receipt of the written notice described above, whichever occurs first.

....

**4.** While neither party challenges the court's conclusion on this point, it would seem that the final unpaid and approved invoice of $32,658, plus the retainage of $59,371, is the balance against which Goodwin could enforce its lien. *See Biette*, 676 A.2d at 496.

the court's conclusion that Fox breached the contract when it failed to provide timely progress payments to Campbell was not clearly erroneous. Because Fox breached the contract, Campbell was entitled to stop work and recover contract damages.

[¶ 19] Second, the court did not err when it concluded that the costs incurred by Fox to complete the job did not reduce the balance due. Fox claims in general terms that he incurred a cost overrun of $200,000. In calculating this figure. Fox did not distinguish between the costs attributable to Campbell's walking off the job and the costs attributable to faulty workmanship. Although the balance available for the payment of liens is generally determined by considering the balance due pursuant to the contract less the amount of any expenses incurred or damages sustained attributable to the contractor walking off the job. *see Pond Cove,* 598 A.2d at 1182–83, the owner may not deduct these costs if the owner's breach caused the contractor's departure, *see West v. Jarvi,* 44 Wash.2d 241, 266 P.2d 1040, 1044 (1954); RESTATEMENT (SECOND) OF CONTRACTS § 347 cmt. d, illus. 6 (1981). To the extent that the cost overrun is attributable to faulty workmanship, the court did not err when it held that Fox's estimate was insufficient proof of the amount of such an offset. Consequently, the court did not commit clear error when it found that the retainage was the balance due Campbell from Fox and that Goodwin could enforce its lien against that sum.

The entry is:

Judgment affirmed.

