STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
Cumberland, ss, Clerk's Office

JUL 03 2014

RECEIVED

ENTERED JUL 2 8 2014

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV- 13-361

NDM-CUM-07-0314

INTERNATIONAL BUSINESS
GROUP,

      Plaintiff

v.

RYAN J. BYTHER,

      Defendant

JUDGMENT

On March 20, 2014, the court granted plaintiff's motion for summary judgment on count I, fraud, of plaintiff's complaint.[1] Judgment was entered in favor of plaintiff and against defendant in the amount of $240,734.44, plus interest and costs.

Jury-waived trial on count II, punitive damages, of plaintiff's complaint was held on April 24, 2014. For the following reasons, judgment is entered in favor of defendant and against plaintiff on count II of plaintiff's complaint.

Findings

Thomas Manning is a member and the manager of plaintiff, a Maine limited liability company in good standing. Plaintiff owned and operated Diggers and Liquid Blue Pub, a restaurant and bar in the Old Port. In 2007, the pub's liquor license was not renewed by the city. Mr. Manning appealed the nonrenewal.

Plaintiff had a restaurant across the street from Diggers and Liquid Blue Pub called Cake Restaurant, which was an upscale space. A broker brought defendant to see this restaurant. Defendant understood plaintiff had the business across the street, which was not for sale on the open market but was subject to private negotiations.

1

According to Mr. Manning, defendant stated he had a construction company with many contracts. He stated he worked with wealthy individuals who supported his operation. He stated he intended to buy Old Port businesses and could "cut a check" for the business that day because that was "chump change" to him. According to Mr. Manning, when he questioned defendant's financial ability, defendant interrupted and discussed his bank accounts and income flow. (Pl.'s Ex. H1, pp. 1-2.)

A purchase and sale agreement for Diggers and Liquid Blue Pub with owner financing and a purchase and sale agreement for Cake Restaurant for cash to be paid within a few months were signed by entities involving Mr. Manning and defendant. (Pl.'s Exs. F, G.) According to Mr. Manning, defendant lured Mr. Manning into financing the entire operation, which he agreed to because he believed defendant knew the industry and had support. It appears no investigation or due diligence was performed with regard to defendant's financial status or other representations prior to these agreements.

Plaintiff received $25,000.00 at the closing for Diggers and Liquid Blue Pub and nothing more of the $115,000.00 price. With regard to the purchase of Cake Restaurant, defendant failed to pay the second installment of $12,500.00 and paid nothing thereafter. (Pl.'s Exs. F, G, H1, p. 5.)

When defendant did not pay the debts, Mr. Manning obtained a judgment on the two notes.[2] Plaintiff's attorney began disclosure proceedings and a hearing was scheduled for June 19, 2008. On June 18, 2008, defendant filed for bankruptcy and the

---

[1] Defendant did not comply with the procedural requirements of Rule 56. See Order dated 3/20/14.

[2] Defendant has represented himself in this case. He filed an answer but did not raise the affirmative defense of res judicata. See John W. Goodwin, Inc. v. Fox, 1999 ME 33, ¶ 13, 725 A.2d 541; Sargent v. Sargent, 622 A.2d 721, 722-23 (Me. 1993).

2

disclosure hearing did not take place.[3] During the bankruptcy proceedings, defendant advertised a new venture with partner Forrest Bradbury. (Pl.'s Ex. I.) Mr. Bradbury eventually received a temporary order for protection from harassment against defendant. (Pl.'s Ex. J.) Defendant stated Mr. Bradbury's allegations were false but he "got what he wanted" by obtaining a temporary order. Mr. Bradbury failed to appear at the final hearing and the protection order was terminated. The advertised restaurant never opened.

Another disclosure hearing was scheduled for June 21, 2013. Defendant filed for bankruptcy again on June 19, 2013. Plaintiff filed a motion for relief from stay. The bankruptcy case was dismissed because defendant had filed too soon. (Pl.'s Ex. T.) Defendant had been working on the filing for months but could not afford the filing fee.

Mr. Manning contends defendant's statements under oath at the disclosure hearing were inaccurate, particularly regarding vehicles he owns. Mr. Manning has traveled to defendant's residence several times during 2013 and hired a private investigator. Defendant lives in a very nice development of large, well-maintained homes that sell for $400,000.00 to $600,000.00. The house is owned by a wealthy friend of the defendant, who rents the house to defendant on a monthly basis. The Corvette in the driveway is owned by the owner of the house.

A District Court judge ordered $2,500.00 to be turned over to plaintiff. The funds were unavailable when the trustee summons was served. (Pl.'s Ex. T.)

At the time of the purchase and sale agreements, Mr. Manning was 40 years old and hoped to get married and make a career change. He needed operating capital to start his own business. He expected the monthly payments from the sale of Diggers

---

The landlord of both buildings, Josh Dolgin of Old Port Retail Holdings, also obtained a judgment against defendant. (Pl.'s Ex. H2.) The judgment was never collected.

3

and Liquid Blue Pub and the funds from the sale of Cake Restaurant would provide that capital. Based on his previous work in the IT industry, Mr. Manning testified he could have earned $100,00.00 to $150,000.00 per year, based on an hourly rate of $100.00 to $150.00 per hour for 50 to 60 hours per week. According to Mr. Manning, he lost these opportunities because he received no installment payments or cash from either sale from defendant. In addition, he has incurred $30,000.00 in legal fees trying, unsuccessfully, to collect the debt from defendant.

Defendant has created single member limited liability companies. At the 2013 disclosure hearing, it was determined defendant had four or five SMLLCs at the time. (See Pl.'s Exs. L, M, N, P, Q, R.) One of those was Innovative Development Co., LLC, against which an attachment was entered in favor of the American Legion. (Pl.'s Exs A, B.) Defendant was convicted of class B theft by deception from the American Legion and received a six-month sentence of incarceration. (Pl.'s Exs. C, D.)

Defendant stated that during 2008, parts of his life were very overwhelming and stressful. In spite of good intentions and ideas, he took on more than he should have regarding the American Legion relationship. The economy "tanked," his ex-wife burned his house and took his children to Texas. He eventually was awarded custody of the children.

Mr. Manning agreed on cross-examination that some of his contentions regarding defendant were based on assumptions and conversations with other people. Mr. Manning knew no details about the dispute between Stephen Drelick and Innovative Development Company, LLC. (Pl.'s Ex. A.) Defendant stated this case involved a contract dispute that was settled out of court.

---

[3] A 2009 filing by defendant was dismissed. (Pl.'s Ex. K; see also Pl.'s Ex. S.)

4

All of Mr. Manning's information about the Forster Mill project came from Adam Mack, who was involved in the project and who, defendant heard, had gone to jail. When questioned during trial with the use of allegations in a newspaper article[4] about the Forster Mill project, defendant disputed the allegations. Mr. Manning never spoke to Mr. Bradbury.

Conclusions

> In Tuttle v. Raymond, the Law Court held:

> Punitive damages are available based upon tortious conduct only if the defendant acted with malice. This requirement of malice will be most obviously satisfied by a showing of "express" or "actual" malice. Such malice exists where the defendant's tortious conduct is motivated by ill will toward the plaintiff. Punitive damages will also be available, however, where deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied. We emphasize that, for the purpose of assessing punitive damages, such "implied" or "legal" malice will not be established by the defendant's mere reckless disregard of the circumstances.

Tuttle v. Raymond, 494 A.2d 1353, 1361 (Me. 1985) (internal citations omitted); see also Bratton v. McDonough, 2014 ME 64, ¶ 26, ___ A.3d ___ (affirmative representation by defendant that there was no lead in the house when he knew lead was present could be sufficient for fact-finder to find implied malice); Lougee Conservancy v. CitiMortgage, Inc., 2012 ME 103, ¶ 28, 48 A.3d 774 (no punitive damages when plaintiffs failed to present facts establishing a pattern of behavior).

Plaintiff has the burden of proving by clear and convincing evidence he is entitled to an award of punitive damages. See Hayworth v. Feigon, 623 A.2d 150, 159 (Me. 1993); Tuttle, 494 A.2d at 1363 ("[T]he party with the burden of persuasion may prevail only if he can place in the ultimate factfinder an abiding conviction that the truth of [his] factual contentions are 'highly probable'.").

---

[4] Plaintiff's exhibit O, which was not offered into evidence.

On this record, the court does not have an abiding conviction that the truth of plaintiff's factual contentions is highly probable. Newspaper articles,[5] assumptions, and hearsay do not meet the standard of clear and convincing evidence. On this record, the court cannot conclude defendant acted with malice or ill will toward plaintiff. Further, defendant's conduct was not so outrageous that malice toward plaintiff can be implied. Although Mr. Manning listed other incidents involving defendant, Mr. Manning had little credible knowledge about the facts of those incidents.

The entry is

> Judgment is entered in favor of Defendant and against Plaintiff on Count II of Plaintiff's Complaint.

Date: July 3, 2014

Nancy Mills
Justice, Superior Court

---

[5] Plaintiff's exhibit E was offered but not admitted into evidence. Plaintiff's exhibit O was not offered.

6

DAVID TURESKY ESQ
477 CONGRESS ST
SUITE 400
PORTLAND ME 04101-3409




RYAN BYTHER
1 BARLEY LANE
SCARBOROUGH ME 04074