Robert N. BIETTE, et al.

v.

## SCOTT DUGAS TRUCKING AND EXCAVATING, INC. et al.

Supreme Judicial Court of Maine.

Argued April 4, 1996.

Decided May 15, 1996.

John F. Shepard, Jr. (orally), Shepard & Shepard, P.A., Freeport, for Appellants.

Mary Lou Ciolfi (orally), Voorhees & Ciolfi, Brunswick, Stanley Greenberg (orally), Portland, Robert Edmond Mittel (orally), Mittel, Asen, Eggert, Hunter & Cary, Portland, Susan Oram, Isaacson, Raymond & Bonneau, Lewiston, for Appellees.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

DANA, Justice.

Scott Dugas Trucking and Excavating, Inc. appeals from a summary judgment entered in the Superior Court (Cumberland County, *Saufley, J.*) ordering the distribution of escrow funds deposited in an interpleader action brought by Robert and Mary Biette. Dugas also appeals from the court's denial of its motion for discovery and the dismissal of its counterclaim. Dugas's numerous contentions are uniformly without merit. We affirm the judgment and award sanctions for a frivolous appeal pursuant to M.R.Civ.P. 76(f).

In September 1992 the Biettes entered into a construction contract for a house with Homeplace Building and Remodeling, Inc., a general contractor. In July 1993 the Biettes were served with a notice of trustee process by Dugas.[1] In August the Biettes received a final invoice from Homeplace in the total amount of $45,900. All but $2,979.47 of that amount was earmarked for payment to vari-

ous subcontractors who had provided labor and materials for the construction of the Biettes' residence. But for several punch list items that remained to be completed by Homeplace the contract was completed. Since August 1993 Homeplace and six subcontractors[2] have filed mechanics' liens and commenced actions to enforce and preserve those liens.

The Biettes filed a motion to dismiss Dugas's trustee process, which the court (*Lipez, J.*) granted. We affirmed on the alternative ground of untimely service of trustee process. *See Scott Dugas Trucking & Excavating, Inc. v. Homeplace Bldg. & Remodeling, Inc.,* 651 A.2d 327 (Me.1994). In April 1994 Dugas obtained a judgment that Homeplace was liable to it in the amount of $54,237.02 plus interest, costs, and attorney fees, on an execution previously issued against Homeplace's predecessor corporation. Dugas secured this judgment by filing a writ of execution in the Cumberland County Registry of Deeds and the Secretary of State's Office.

The Biettes filed this interpleader action naming Homeplace, Dugas, and the subcontractors as defendants. The Biettes deposited $41,952.08 in an escrow account and sought a decision regarding the conflicting claims of the defendants to the money. The mechanics' lien actions were stayed until the conclusion of this interpleader action.

Dugas filed a motion to dismiss and in a "counterclaim against all other parties" sought the escrow money plus an additional sum and tools and equipment allegedly held by the Biettes. The court denied Dugas's motion to dismiss. One of the subcontractors, Redlon & Johnson, moved to dismiss Dugas's counterclaim for failure to state a claim, which the court granted. Dugas also filed a motion to allow discovery which the court denied without prejudice. Redlon filed a motion for a summary judgment seeking a

---

1. Dugas had obtained a judgment and execution against a predecessor corporation to Homeplace and sought a judgment declaring Homeplace liable as a successor corporation. In an effort to seize some security for its potential judgment Dugas filed a motion for attachment of Homeplace's property and trustee process to the Biettes.

2. The subcontractors are the following: Nesco, Capozza Tile Co, Inc., Security Engineering, Greg Burton for Painting, Inc., Redlon & Johnson (formerly HCL, Inc.), and B & L Enterprises and Hardwood Floors.

division of the escrow funds in accordance with a proposed order accompanying its motion. Other subcontractors joined Redlon's motion and the Biettes filed a motion in partial support. The Biettes and Homeplace submitted a stipulation of facts regarding the construction contract and the amounts owed each subcontractor.

Following a hearing on the motions for a summary judgment, the court ordered $39,-403.02 of the escrow funds to be paid to the subcontractors who appeared. The Biettes were ordered to pay Dugas the amount of $1,801.65 (the amount that would have been owed to two other subcontractors who did not appear in the action). The court ordered the Biettes to retain $1,541.34, the balance of the escrow account. The court also denied Dugas's motion for discovery. Dugas appeals.

■■■ In reviewing an appeal from the grant of a summary judgment we view the evidence in a light most favorable to the party against whom the judgment was entered and review the trial court's decision for errors of law. *Gonzales v. Commissioner, Dep't of Pub. Safety*, 665 A.2d 681, 682 (Me. 1995). When there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law we will affirm a summary judgment. *Id.* at 682–83.

## I.

■■■ Pursuant to M.R.Civ.P. 73(b), Dugas specified in its notice of appeal that it was appealing, *inter alia*, from the court's refusal to permit discovery. Dugas, however, did not adequately address this matter in its brief. Dugas merely makes reference in its statement of facts that it had no opportunity to conduct any discovery. Because issues that are not briefed are not considered on appeal, Dugas's reliance on the discovery issue is precluded. *See Scott v. Lipman & Katz, P.A.*, 648 A.2d 969, 974 (Me.1994) (issues not briefed and raised at oral argument are not considered on appeal).

## II.

■■■ Dugas contends that the stipulation of facts between Homeplace and the Biettes was both a fraud on the court and part of a "conspiracy" to keep the Biettes' money away from it. The court concluded that there were no facts in dispute between Homeplace and the Biettes or as to the amounts owed the subcontractors. Dugas produced no evidence to support its fraud allegations. Unless there is sufficient evidence in favor of the nonmoving party for a jury to return a verdict for that party there is no issue for trial. *Bouchard v. American Orthodontics*, 661 A.2d 1143, 1144–45 (Me. 1995). " 'If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.' " *Id.* (citation omitted). Also, M.R.Civ.P. 7(d)(2) requires a party opposing a motion for a summary judgment to file "a separate, short and concise statement of the material facts, supported by appropriate record references, as to which it is contended that there exists a genuine issue to be tried." If a party fails to file a counter statement of facts in accordance with this rule, all facts alleged in the moving party's statement of undisputed facts are deemed admitted. *Guiggey v. Bombardier*, 615 A.2d 1169, 1171 (Me.1992). Although Dugas filed a statement of material facts it did not provide record references as required by Rule 7(d)(2). Accordingly, the contents of Dugas's statement are unsupported speculation that does not generate a genuine issue of material fact. *See Kitchen v. City of Calais*, 666 A.2d 77, 78–79 (Me.1995). The court correctly determined that this interpleader action could be resolved by applying the law to the undisputed facts.

## III.

■■■ Dugas contends that because it has a lien on Homeplace's personal property, including the Biette account receivable held by Homeplace, it has a lien on the Biettes' money. The court properly concluded that Dugas has a judgment lien against the real and personal property of Homeplace but no independent claim against the real or personal property of the Biettes. *See* 14 M.R.S.A. § 4651–A (Supp.1995).[3] The court correctly

**3.** 14 M.R.S.A. § 4651–A (Supp.1995) provides

that the filing of an execution issued by a court

determined that Dugas has a lien against the Biette account receivable held by Homeplace, which, if collected by Homeplace would be payable to Dugas. A judgment lien creditor stands in the shoes of his judgment debtor so as to reach all assets that could be reached by the debtor. 46 Am.Jur.2d *Judgments* § 370 (1994). The lien cannot attach, however, to any greater interest than the debtor has. *Id.* § 380. Thus as a judgment creditor Dugas's claim to the Biettes' money is derivative of Homeplace's entitlement to it. As discussed below the court correctly applied the mechanics' lien laws to the undisputed facts and properly determined that Homeplace, and therefore Dugas, is not entitled to the escrow money until the subcontractor liens are satisfied.

### IV.

■ Dugas contends that two of the subcontractors named as defendants in the interpleader action, Security Engineering and Nesco, do not have mechanics' liens because the court in which they commenced their mechanics' lien actions lacked subject matter jurisdiction. This argument is based on the fact that Security and Nesco filed their respective actions in the Portland District Court even though the Biettes' house is in Brunswick. "[L]iens ... may be preserved and enforced by action ... filed with the Superior Court or District Court clerk in the county or division where the house ... on which a lien is claimed, is situated...." 10 M.R.S.A. § 3255(1) (Supp.1995). Dugas incorrectly characterizes its argument as one involving subject matter jurisdiction rather than venue. Dugas, however, waived the issue of improper venue because it did not raise it either in a responsive pleading or by a motion in the Superior Court. *See* M.R.Civ.P. 12(h).

with a registry of deeds within one year after issuance of the execution creates a lien in favor of the judgment creditor upon the judgment debtor's real property. It also states that the filing of an execution with the proper place for perfecting a security interest in personal property within one year after issuance of the execution creates a lien in favor of the judgment creditor upon the judgment debtor's personal property.

### V.

■ Dugas contends that the Biettes' affidavit regarding their knowledge of the subcontractors' liens was improperly based on their "information and belief" rather than on "personal knowledge" as required by M.R.Civ.P. 56(e). Because Dugas did not object in the Superior Court to the alleged improper affidavit it has failed to preserve this issue for appellate review. *Estate of Althenn v. Althenn,* 609 A.2d 711, 713 n. 3 (Me.1992).

### VI.

■ Dugas contends that the lien claims are invalid because the Biettes had not consented to being responsible for paying the subcontractors directly. Dugas misperceives the nature of the "consent" necessary for the application of the Mechanics' Lien Statute. In order for a mechanic's lien to have something to attach to, a laborer or a materialman must either have a contract with or the consent of the owner of the land. 10 M.R.S.A. § 3251 (Supp.1995).[4] In this case it is undisputed that Homeplace had the Biettes' consent to engage the services of the subcontractors. The statute does not require that the owners consent to being responsible for payments to the subcontractor, it only requires that they consent to the goods or services being provided.

### VII.

■ In Dugas's statement of material facts in opposition to the motion for a summary judgment Dugas states that except for Nesco, Hancock Lumber, and Capozza Tile, the subcontractors do not have valid liens because of the failure to follow the proper procedure pursuant to 10 M.R.S.A. § 3255.

4. 10 M.R.S.A. § 3251 (Supp.1995) states in relevant part:
    Whoever performs labor or furnishes labor or materials ... or performs services ... in erecting, altering, moving or repairing a house ... by virtue of a contract with or by consent of the owner, has a lien thereon and on the land on which it stands and on any interest such owner has in the same, to secure payment thereof, with costs.

Dugas's contention, however, was not supported with any record reference to evidence as required by M.R.Civ.P. 7(d)(2).

## VIII.

Dugas contends that because the Biettes have stipulated that most of the money otherwise due Homeplace was earmarked for payment to the subcontractors, there was really no "balance due" Homeplace, and therefore the Biettes are not exposed to a payment to the subcontractors. Dugas then argues that because it would be unfair to let the Biettes keep the money, it should be paid over to Dugas. When persons who have furnished labor, material, or services without a contract with a homeowner seek enforcement of their liens, the Mechanics' Lien Statute provides a "double payment" defense to the homeowner. 10 M.R.S.A. § 3255(3) (1980);[5] *see Pond Cove Millwork Co. v. Steeves,* 598 A.2d 1181, 1182–83 (Me.1991). After a homeowner receives notice of the mechanic's lien, the statute provides that the lien may be enforced against the property affected only to the extent of the "balance due" to the person with whom the homeowner has directly contracted. 10 M.R.S.A. § 3255(3); *see Pond Cove,* 598 A.2d at 1182–83 (because there was no balance due the general contractor on receipt of the notice of mechanics' liens the lien claims fail). Whether there is a balance due is a question of fact to be determined by considering the work done less the amount withheld for work not performed properly. *Pond Cove,* 598 A.2d at 1182–83. The total amount of Homeplace's final invoice to the Biettes for work completed was $45,900. The amount due was subject to the subcontractors getting paid and the remaining balance of $2,979.47 would have been owed to Homeplace but for the fact that several punch list items were not completed by Homeplace. The fact that the Biettes and Homeplace stipulated that from the total amount of the invoice, $42,920.53 was earmarked for payment to the subcontractors does not change the fact that $45,900 was the "balance due" Homeplace for purposes of section 3255(3).

## IX.

The court found that $13,655 of the $45,900 was the "final payment" owed under the agreement[6] and that the remaining monies ($32,245) consisted of progress payments due and charges for change orders under the agreement. The court concluded that the funds that make up the final payment are not payable to Homeplace because Homeplace never provided lien waivers from the subcontractors as required by the agreement.[7] As to the money owed the subcontractors the issue was whether the funds should be distributed to Homeplace or the subcontractors. The court found that nothing in the contract affirmatively required distribution of the progress payment directly to Homeplace and

**5.** 10 M.R.S.A. § 3255(3) (1980) states in relevant part:

If the labor, materials or services were not performed or furnished by a contract with the owner of the property affected, the lien ... may only be enforced against the property affected to the extent of the balance due to the person with whom the owner has directly contracted to perform or furnish the labor, materials and services on which that lien claim is based. The defense established by this subsection shall only be available with respect to sums paid by the owner to the person with whom the owner has directly contracted where payment was made prior to commencement of an action to enforce such lien by the person performing or furnishing labor, materials or services without a contract with the owner or a written notice from the person performing or furnishing labor, materials or services without a contract with the owner.... In no case shall the total amount due from the owner to those performing or furnishing labor, materials or services without a contract with the owner exceed the balance due from the owner to the person with whom he has directly contracted at the time of service of process on the owner in a lien action or receipt of the written notice described above, whichever occurs first.

**6.** The final invoice from Homeplace to the Biettes lists $13,655 as final payment amongst a list of other payments due for a change order, allowances, and progress payments. Article 4 of the contract provides a payment schedule for the project and lists $13,655 as the "final payment."

**7.** Article 22 of the construction contract states that the Biettes' final payment obligation does not mature until Homeplace delivers to the Biettes "a complete release of all liens arising out of this Contract, or receipts in full covering all labor and materials for which a lien could be filed...."

concluded that pursuant to the mechanics' lien laws, Homeplace had no claim on the funds until the lienholders receive payment.

Dugas contends that the subcontractors are subordinate to Homeplace in claiming the Biettes' assets and that the court erred in making the subcontractors direct creditors of the Biettes. Dugas further contends that the contract requires the Biettes to pay Homeplace directly instead of the subcontractors.

■■■■■ Dugas ignores Homeplace's stipulation that it makes no claims against the escrow money. Moreover, a contractor such as Homeplace cannot defeat the liens of his laborers or materialmen by asserting a lien on the improved property superior to theirs. 53 Am.Jur.2d *Mechanics' Liens* § 264 (1970). Also, the effect of ordering the Biettes to pay Homeplace directly would subject the money to Dugas's judgment lien and the Biettes would thereafter also be subject to the claims of the subcontractors. Such a result would be contrary to the intent of the mechanics' lien laws that are designed to protect the rights of the owner and provide security for those performing labor or furnishing material. *Pineland Lumber Co. v. Robinson*, 382 A.2d 33, 38 (Me.1978). In addition, the court's order for the Biettes to pay the subcontractors directly is not contrary to the contract. Article 4 of the contract provides that "[b]ased upon invoices submitted to the Owner by the Contractor, the Owner shall make progress payments on account of the Contract Sum to the Contractor...." Article 13, however, provides that "[p]ayments otherwise due may be withheld on account of ... liens filed, ... or failure to make pay-

ments properly to subcontractors or for material and labor."

## X.

■■■ Dugas contends that the subcontractors are creditors of Homeplace and, pursuant to 11 M.R.S.A. § 9–301(1)(b) (1995), Dugas's lien has priority over them because their security interests are unperfected. Dugas also claims priority because after its attorney notified the subcontractors of its attachment of Homeplace's real and personal property the subcontractors failed to respond within the meaning of 14 M.R.S.A. § 4253 (1980).[8] Dugas's claims of priority are irrelevant and the court properly concluded that 14 M.R.S.A. § 4253 is not applicable to the instant case because the subcontractors and Dugas have liens on different property and neither had a lien on the escrow money. The subcontractors have liens on the Biettes' house and the land on which it stands. Dugas has a lien on Homeplace's real and personal property.

## XI.

■■■ Dugas contends that the parties are collaterally estopped from challenging the court's (*Lipez, J.*) determination that the subcontractors have to show an assignment in order to bypass Dugas.[9] The court determined that the amount of the Biette's final payment was contingent and therefore not subject to trustee process and that the remainder of the debt was not subject to trustee process because Dugas failed to join the subcontractors as parties. The court cor-

---

**8.** 14 M.R.S.A. § 4253 (1980) states that:
The officer may give the claimant written notice of his attachment. If he does not within 10 days thereafter deliver to the officer a true account of the amount due on his claim, he thereby waives the right to hold the property thereon as against the attaching creditor. If his account is false, he forfeits to the creditor double the amount of the excess, to be recovered in a civil action.

**9.** Dugas also contends that the court erred in dismissing its counterclaim for failure to state a claim. Initially we note that Dugas failed to correctly identify its claim. Although Dugas labeled its claim as a "counterclaim against all other parties" a claim against a co-party is a cross-claim and a claim against the opposing

party is a counterclaim. M.R.Civ.P. 13. Dugas adopted the Biettes complaint as its own counterclaim and sought an additional $4,592.92, tools, and equipment held by the Biettes. The Biettes' interpleader action, however, already sought a determination as to the disposition of the escrow funds. A counterclaim in an interpleader action may be treated as an answer where it is essentially a statement of a defendant's claim to the fund and a denial of the rights of the other parties. 48 C.J.S. *Interpleader* § 38 (1981). Further, when a counterclaim is merely a reassertion of the claim included in the defendant's answer and recognized by plaintiff, the counterclaim may not be granted separate consideration. *Id.*

rectly cited *Jordan v. Harmon*, 73 Me. 259, 261 (1882), for the proposition that Dugas could not "have an adjudication against the trustee which will expose the trustee to litigation with any third party whose claim to the fund by virtue of an assignment from the principal debtor, *or in any other way*, has been made known by the trustee in his disclosure." *Id.* (emphasis added). Contrary to Dugas's contention the court did not require the subcontractors to show an assignment from the Biettes.

## XII.

 Dugas contends that the Biettes are bound by their admission in their complaint that they have no "title to or interest" in the escrow funds and therefore any interest they have in the money is subordinate to Dugas's lien. This argument is based on a strained interpretation of an interpleader action. The Biettes do not dispute that the money is owed, but they cannot determine which person is entitled to the money without subjecting themselves to liability. This is the very purpose of commencing an interpleader action. *See* M.R.Civ.P. 22. Therefore the Biettes properly commenced an interpleader action in order for the court to determine the disposition of the money.

Dugas's remaining contentions are also without merit and do not warrant discussion.

## XIII.

The Biettes, Homeplace, and Redlon request treble costs and attorney fees for having to defend Dugas's frivolous appeal. Pursuant to M.R.Civ.P. 76(f) we may award treble costs and reasonable expenses, including attorney fees, to the appellee if we determine that the appeal is "frivolous or instituted primarily for the purpose of delay." The Court exercises its power to sanction only in "egregious cases." *Rich v. Fuller*, 666 A.2d 71, 77 (Me.1995). Dugas's unsubstantiated fraud allegations, unpreserved arguments, meritless contentions, and bad faith litigation justify imposing sanctions. *See Brandis v. Brandis*, 515 A.2d 1153, 1154 (Me.1986) (sanctions imposed where there was no reasonable belief that an appeal would be successful); *Wilcox v. Lerman*, 447

A.2d 821, 822 (Me.1982) (sanctions imposed when appellant did not preserve issues for review). Accordingly, we conclude that this appeal is frivolous. We award treble costs and by separate order attorney fees on this appeal.

The entry is:

Judgment affirmed. Further ordered that Dugas pay to the appellees treble costs together with attorney fees in a sum to be determined by this Court.

All concurring.