ENTERED NOV 1 4 20

STATE OF MAINE
FRANKLIN, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-13-36

WRS-FRA-11-12-14

EDMOND R. BERRY,
SCOTT BERRY, and
EDMOND R. BERRY, JR.,
        Plaintiffs

    v.

DECISION AND ORDER

LINDA TOOTHAKER
and REGAN PINGREE,
        Defendants

## INTRODUCTION

This matter is before the Court on the Defendants' Motion for Summary Judgment pursuant to M.R. Civ. P. 56. This litigation involves a dispute as to the location of a landmark, referred to as "the Russell Place," as used in a warrant article approved by the Town of Avon at its annual meeting held on March 16, 1968, to discontinue a portion of a town road. The effect of that discontinuance was to create a public easement in that portion of the road to the Russell Place. If the Russell Place is located on property belonging to the Plaintiffs, the public easement allows them to use the road to access their property. If the Russell Place is not located on Plaintiffs' land, however, the public easement does not extend to their land and would not provide them with access to their property.

For the reasons discussed below, the court grants summary judgment in favor of the Defendants.

## PROCEDURAL HISTORY

This matter was commenced by the filing a two-count complaint dated November 14, 2013. In their complaint, the Plaintiffs allege that they are engaged in the logging business and that they purchased land in the Town of Avon in late 1994, the only vehicle access to which is provided by what is now known as the Mount Blue Road. The Mount Blue Road intersects with State Route 4 and, it is alleged, extends westerly to and across the Plaintiffs' land.

In their complaint, the Plaintiffs have asserted that at its annual meeting held on March 16, 1968, the Town of Avon voted on Article 34 "to discontinue the road from the intersection at the Bill Arnold Turn to the Russell Place." The parties are in agreement that the "road" referred to in Article 34 was the Mount Blue Road. The minutes of that meeting of March 16, 1968 reflect that the residents of Avon did, in fact, vote in favor of Article 34.

The Plaintiffs further allege, and the Defendants do not dispute, that by operation of the law in existence at the time, the discontinuance of the road created a public easement in that portion of the road "from the intersection of the Bill

2

Arnold Turn to the Russell Place."[1] The Plaintiffs claim that "[t]he point then known as the Russell Place is now located within the boundaries of Plaintiffs' property in Avon."

In Count I of their complaint, the Plaintiffs allege that the section of the Mount Blue Road that was discontinued in 1968, and as to which there is a public easement, passes within the boundaries of property owned by the Defendants. The Plaintiffs further allege that in late October, 2011, Defendant Toothaker, either acting alone and in concert with Defendant Pingree, "blocked and prohibited the Plaintiffs' access to their property in Avon with a locked gate marked 'no trespassing,' located at or near where the discontinued section of the Mount Blue Road enters the Toothaker property's eastern boundary." The Plaintiffs seek a declaration, pursuant to 14 M.R.S. § 5951 *et. seq.,* (The Declaratory Judgments Act) that they "have the conclusive right to travel over the Mount Blue Road as it passes across the Defendants' land in Avon . . . ."

---

[1] By virtue of 23 M.R.S. § 3004 (Supp. 1967-1968) the discontinuance of a town way "shall be presumed to relegate the town way to the status of a private way unless the town meeting article shall specifically state otherwise." Title 23 M.R.S. § 3021(2) further provides that "[p]rivate ways created pursuant to sections 3001 and 3004 prior to the effective date of the Act are public easements." The term "public easement" is defined to mean "an easement held by a municipality for purposes of public access to land . . . and includes all rights enjoyed by the public with respect to private ways created by statute prior to the effective date of this Act." 23 M.R.S. § 3021(2). Finally, a "private way" includes a "public easement as defined in section 3021." 23 M.R.S. §1903(10-A).

Count II of the Plaintiffs' complaint asserts a cause of action for "tortious interference with easement" and seeks damages, attorney fees, and costs.

In their answer dated and filed on December 11, 2013, the Defendants specifically deny that the former Russell Place was ever located on the Plaintiffs' property and further deny that the Plaintiffs have any "right-of-way" over the Defendants' land.

On March 27, 2014, the Plaintiffs moved for a preliminary injunction pursuant to M.R. Civ. P. 65(b). The motion was supported by the Affidavit of Edmond R. Berry, Jr., dated March 21, 2014. In his affidavit, Mr. Berry stated that he, his brother, and his father purchased land in Avon in November 1994 and logged the property as Berry Logging, hauling "out the logs over the Mount Blue Road . . . ." (Berry Aff., ¶¶ 2-4.) In October, 2011 a gate was installed that prevented the Plaintiffs from reaching their property "by using the portion of the Mount Blue Road that travels across the Defendants' properties." (Berry Aff., ¶ 5.) The Plaintiffs sought injunctive relief to prevent what they claimed was irreparable harm due to the "possibility that trees that should be harvested now will be lost to disease and overgrowth and will be harmful to younger trees." (Plaintiffs' Motion for Preliminary Injunction with Incorporated Memorandum, at 5.)

On April 11, 2014, the Defendants opposed the motion for preliminary injunction and moved for summary judgment pursuant to M.R. Civ. P. 56,

asserting that the Russell Place, at which point the public easement terminates, is (or was) located on Defendant Pingree's land and does not extend to the Plaintiffs' land. According to the Defendants, the public easement in the portion of the Mount Blue Road discontinued in 1968, stopped well short of the Plaintiffs' land, and the Plaintiffs have no right to travel across the Defendants' properties to get to their own. For that reason, the Defendants claim that they are entitled to judgment as a matter of law on both counts of the complaint. The Defendants' motion for summary judgment is supported by numerous affidavits and exhibits, which will be discussed in greater detail below.

The Plaintiffs have opposed the motion for summary judgment and have submitted an affidavit, with attached exhibit, suggesting that the Russell Place was located west of the Defendants' properties and on land now owned by the Plaintiffs. Thus, the Plaintiffs assert that a genuine issue of material fact exists as to where the Russell Place was located, as contemplated by the March 16, 1968 discontinuance vote by the Town of Avon, and the Defendants are not entitled to judgment as a matter of law.

Oral argument on the Defendants' Motion for Summary Judgment was held before the court on October 17, 2014, at the Androscoggin County Superior Court. By agreement of the parties, only the motion for summary judgment was addressed

at oral argument and only that motion will be ruled upon by the court in this Decision and Order.

## THE MOTION FOR SUMMARY JUDGMENT

In 1923, the Town of Avon, at its annual town meeting, approved an article of discontinuance of the Mount Blue Road from the Frank Russell buildings to the Weld town line. (Def.'s S.M.F. ¶ 1.) In 1968, at another town meeting, the Town of Avon approved an article of discontinuance of the portion of the Mount Blue Road from the Bill Arnold Turn to the Russell Place. (*Id.* at ¶ 2.) The parties agree that the Frank Russell buildings referred to in the 1923 discontinuance article are in the same location as the Russell Place referred to in the 1968 discontinuance article. In other words, the Frank Russell buildings and the Russell Place are one and the same.[2] (*Id.* at ¶ 3; Pl.'s O.S.M.F. ¶ 3.) For the sake of convenience, the court will sometimes refer to the location as the "Frank Russell buildings."

Defendants claim that the Frank Russell buildings were within the boundaries of the land now owned by Defendant Pingree, in the location of the cellar hole appearing on a 1994 survey by Bertrand Lambert. (Def.'s S.M.F. ¶ 4.)

---

[2] The parties are in agreement that no public easement was created or exists on that portion of the discontinued Mount Blue Road from the Frank Russell buildings to the Weld line. This is so because prior to September 3, 1965, the discontinuance of a road left no public easement unless specifically provided for in the discontinuance article, and ownership of the way reverted to the abutters on each side to the centerline of the road, who could legally bar the public from using the road. *See Maine Municipal Association, Municipal Roads Manual,* at 15-16 (1999) (citing *Frederick v. Consolidated Waste Servs., Inc.,* 573 A. 2d 387 (Me. 1990)); *Brooks v. Bess,* 132 Me. 113, 167 A. 693 (1993).

In support, Defendants' cite to the affidavits of Andrea Masterman Nurse, Erik Lochmann, Mary F. Dunham,[3] Bruce Dunham, and the accompanying exhibits thereto.

Ms. Nurse is a research assistant and adjunct instructor for the University of Maine who was born and raised in Avon, Maine. (Nurse Aff., ¶ 1.) Ms. Nurse conducted a research project on the history of the settlement near Mount Blue Pond in the Town of Avon as a high school student in 1967 (the "Report"). (*Id.* at ¶ 2.) A copy of the Report is maintained in the collection of the Phillips Historical Society. (*Id.* at ¶ 3.) Page 1 of the Report is a map showing the approximate location of each building in the Mount Blue settlement as those maps appeared on an 1861 map of Franklin County. (*Id.* at ¶ 4; Ex. 1 to Nurse Aff., 1; Ex. 2 to Nurse Aff.) The key to the Report lists building #22 as "J. Irish and F. Russell." (Ex. 1 to Nurse Aff., 1-2.) The Report goes on to explain that Jonathan Irish and his family originally owned building #22. (Ex. 1 to Nurse Aff., 12.) Jonathan Irish had a daughter named Nettie who married Frank Russell. (*Id.*) Frank and Nettie "carried on the farm" and raised a family of four, including their son John, until they moved in 1920 to the Eugene Vining home where Frank Russell passed away in 1928. (*Id.*) Nettie Russell passed away in 1936. (*Id.*)

---

[3] Mary Dunham's affidavit is utilized to attach copies of documents regarding the 1923 and 1968 town meetings in which the respective portions of Mount Blue Road were discontinued.

Mr. Lochmann's affidavit relies on, builds upon, and cites to the 1861 map and the map prepared by Ms. Nurse in the Report. (Lochmann Aff., ¶ 6 (including as Ex. 1 to the Lochmann Aff. the 1861 map and the map and key in Ms. Nurse's Report as Ex. 2 to the Lochmann Aff.)). Mr. Lochmann is a licensed Maine surveyor who notes that building #22 on the Report's map is in the same location as the "J Irish" building on the 1861 map. (*Id.*; Ex. 1 & 2 to Lochmann Aff.)

Mr. Lochmann also cites to a 1929[4] United States Geological Survey ("USGS") map of the Phillips quadrangle lined up with a portion of the 1968 USGS Mount Blue quadrangle map. (Lochmann Aff., ¶ 7; Ex. 3 to Lochmann Aff.) The Mount Blue Road from the "Bill Arnold Turn" to the Weld town line is purportedly highlighted in yellow. (*Id.*) Mr. Lochmann explains that buildings appear as small black squares on the USGS maps. (Lochmann Aff., ¶ 8; Ex. 3 to Lochmann Aff.) The USGS maps show building no. 1 located on the west shore of Mount Blue Pond and building no. 2 located west of building no. 1 on the west side of the Mount Blue Road. (*Id.*) Mr. Lochmann is of the opinion that building no. 2 is in the location of the "J Irish" building on the 1861 map and the "J. Irish and F. Russell" building on the Nurse Report map. (*Id.*) The USGS maps do not

---

[4] The reference in Mr. Lochmann's affidavit to the 1929 USGS map as the "1928" USGS map appears to be a typographical error as evidenced by the handwritten "1929" notation on the map itself and subsequent references to the "1929" map. At oral argument before the court, counsel for the Defendants confirmed that the reference to the "1928" map was, in fact, a typographical error.

show any other buildings on the portion of the Mount Blue Road extending from building no. 2 to the Weld Town line. (*Id.*)

Mr. Lochmann further points to a 1994 survey map prepared by Bertrand Lambert (the "Lambert Survey"). (Lochmann Aff. ¶ 9; Ex. 4 to Lochmann Aff.) The Lambert Survey shows the 1.563 acre "Uhas property" on the west shore of Mount Blue Pond. (Lochmann Aff., ¶ 10; Ex. 4 to Lochmann Aff.) Mr. Lochmann opines that building no. 1 on the 1929 USGS map would lie within the Uhas property. (*Id.*) The Lambert Survey also contains an outline labeled "RUSSELL BUILDINGS" in the upper left corner with the notation "old cellar hole found." (*Id.* at ¶ 8; Ex. 4 to Lochmann Aff.) Mr. Lochmann asserts that the outlined "RUSSELL BUILDINGS" and "cellar hole" are in the location of building no. 22 on the Nurse Report map and building no. 2 on the USGS maps.[5] (*Id.*)

Mr. Lochmann states that the Uhas property shown on the Lambert Survey is the same Uhas property described in a number of deeds attached as exhibits 5 through 9 of his affidavit. Exhibit 5 is a 1945 deed from John W. Russell to Evan C. Webber, conveying premises that include Lot 4, Range 6, which is allegedly

---

[5] Defendants also attach copies of deeds and the Lambert Survey attested by the Franklin County Register of deeds to their motion for summary judgment and opposition to Plaintiffs' motion for preliminary injunction, matching Exhibits 4 to 12 of the Lochmann affidavit. The version of the Lambert Survey attached to Defendants' motion is a larger version of the one attached to the Lochmann affidavit.

where the "RUSSELL BUILDINGS" on the Lambert Survey are located. (Lochmann Aff. ¶ 12; See Exs. 5, 4, 13 to Lochmann Aff.) Based on this, Mr. Lochmann asserts that the "RUSSELL BUILDINGS" were owned by John Russell until 1945, and are now owned by Defendant Pingree by virtue of his deed from Reginal Pingree Jr. (Lochmann Aff. ¶ 12; Exs. 5 & 10 to Lochmann Aff.)

Exhibit 13 to Mr. Lochmann's affidavit is a map that includes lot and range markers, which support Mr. Lochmann's assertion that Lot 4, Range 6 contains the "RUSSELL BUILDINGS" and is on land now owned by Defendant Pingree. (Lochmann Aff., ¶ 15; Ex. 13 to Lochmann Aff.)

Exhibits 6 through 9 to Mr. Lochmann's affidavit are copies of subsequent deeds to the Uhas property described in the deed in Exhibit 5. (Lochmann Aff. ¶¶ 11, 13; Exs. 5-9 to Lochmann Aff.) The subsequent deeds reference the "Russell boat landing" and "a right of way to said premises from the town road to follow the road as now traveled to the Russell Buildings, then across the field to said lot." (Lochmann Aff., ¶ 13; Exs. 6-9 to Lochmann Aff.) Mr. Lochmann asserts that the right of way referenced in the deeds includes the driveway appearing on the Lambert Survey, extending from the Uhas property to the Mount Blue Road, on the opposite side of which is the outline of the "RUSSELL BUILDINGS." (*Id.*)

10

Mr. Lochmann further claims that the only evidence he can find of a "Russell Place" on Plaintiffs' land in 1968 is an 1882 deed that is in their chain of title. (Lochmann Aff., ¶ 14; Ex. 11 to Lochmann Aff.) The 1882 deed shows that Frank A. Russell obtained a one-half interest in the east half of Lot 2, Range 4, the most southwesterly portion of what is now Plaintiffs' land. (*Id.*; see also Ex. 13 to Lochmann Aff.) The other one-half interest in that land belonged to Sidney G. Haley. (*Id.*) On December 24, 1910, Mr. Haley conveyed a full interest in the east half of Lot 2, Range 4 to Sadie D. Beal by deed. (Lochmann Aff., ¶ 14; Ex. 12 to Lochmann Aff.) Mr. Lochmann opines that this suggests Mr. Haley had obtained Frank Russell's half interest in the land, although there is no record of the acquisition. (Lochmann Aff., ¶ 14.) The deeds do not reference any buildings, only land. (*Id.*)

From this evidence, Mr. Lochmann opines that the Frank Russell Buildings/Russell Place referenced in the 1923 and 1968 discontinuance articles, are in the same location as the "RUSSELL BUILDINGS" on the Lambert Survey, which is surrounded on all sides by land owned by Defendant Pingree. (*Id.* at ¶ 15.)

Defendants also rely on the affidavit of Bruce Dunham, a 77 year old man who lived his entire life, minus four years for military service, in Avon, Maine. (Mr. Dunham Aff., ¶ 1.) Mr. Dunham explained that Mount Blue Road extends

11

from Route 4 to the "Bill Arnold Turn." (*Id.* at ¶ 2.) At the Bill Arnold Turn, the Road forks into two roads. (*Id.*) He knows the west fork as the "Bill Arnold Road" and the South Fork as "Basil's Road" or "Russell Road." *Id.*

Beginning in 1960, Mr. Dunham lived on Mount Blue Road near its intersection with Storer Road, which is east of the Parties' properties. *(Id. at* ¶ 3; Ex. 1 to Mr. Dunham Aff.) Mr. Dunham's former home is designated by a red circled "1" on the map attached as Exhibit 1 to his affidavit. (*Id.*) Mr. Dunham subsequently sold that house and moved to his current home, which is on the portion of the Mount Blue Road known to Mr. Dunham as the "Bill Arnold Road," just beyond the "Bill Arnold Turn." (*Id.*) His current house is designated by a red circled "2" on the aforementioned map and a tax map, attached as exhibit 2 to his affidavit. (Id.; Ex. 2 to Mr. Dunham Aff.) Mr. Dunham remembers Basil Rowe and John Russell, and is acquainted with the Defendants. (Mr. Dunham Aff., ¶ 4.) Mr. Dunham asserts that Defendants Pingree and Toothaker own and live on land formerly owned by Basil Rowe and, before him, John Russell. (*Id.* at ¶ 5.) Mr. Dunham asserts that he fished in Mount Blue Pond, and formerly hunted and logged on what is now Defendants' land. (*Id.*)

Mr. Dunham states that there is a second pond, not shown on the maps, known as "Russell Beaver Pond," off the north side of the Russell Road. (*Id.* at ¶ 6.) That pond is identified by a red circled "3" on the tax map. (*Id.*; Ex. 2 to

Mr. Dunham Aff.) In 1968, Mr. Dunham was the Town Constable who posted the warrant for Avon's annual town meeting, which he attended. (*Id.* at ¶ 7.) Mr. Dunham and, to the best of his knowledge, everyone else in attendance at the meeting, knew of no other "Russell Place" than the property near the Russell Beaver Pond. (*Id.*) Mr. Dunham claims he is not aware of anyone ever having lived in Avon on the Mount Blue Road beyond, or to the west of the Russell Place near the Russell Beaver Pond. (*Id.* at ¶ 8.) The location of the Russell Place as identified by Mr. Dunham is on Defendant Pingree's land, well short of the Plaintiff's property.

Plaintiffs argue that the Frank Russell Buildings are located within their property. In support, Plaintiffs point to the affidavit of Keith Cullenberg, a registered Maine land surveyor. (Cullenberg Aff., ¶ 1.) Mr. Cullenberg states that after researching the location of any land once owned by Frank A. Russell and John W. Russell within the Town of Avon and examining the affidavits and exhibits submitted by Defendants, he has found nothing to indicate that Frank A. Russell ever had title to, or an ownership interest in property located within the boundaries of what is now Defendant Pingree's land. (*Id.* at ¶ 4.) Mr. Cullenberg did find, however, an ownership interest in land located within the boundaries of what is now the Plaintiffs' land as evidenced by the March 7, 1882 deed attached to the Lochmann Affidavit as Exhibit 11. (*Id.* at ¶ 5.) Mr. Cullenberg asserts that

13

the only evidence he found indicating John W. Russell had an ownership interest in land within the boundaries of what is now Defendant Pingree's land is the October 10, 1945 deed, which was also included as Exhibit 5 to the Lochmann affidavit. (*Id.* at ¶ 6; Ex. A to Cullenberg Aff.; Ex. 5 to Lochmann Aff.) Mr. Cullenberg states that the 1945 deed, however, is unclear as to John W. Russell's ownership interest in the land because the source of his title is not specifically identified. (*Id.* at ¶ 7.)

Defendants respond that "[i]n all probability, the Jonathan Irish parcel conveyed to Evan [C.] Webber by John W. Russell passed by intestate succession" under then 18 M.R.S.A. § 1001(1). (Def.'s R.S.M.F. ¶ 2.) In particular, Defendants assert that Nettie Russell's entire estate passed by intestate succession to her son John W. Russell at the time of her death in 1936. (*Id.*; Photo of Frank A. Russell and Nettie Irish tombstone.) The passage by intestate succession, Defendants argue, explains why no deed is cited as the source of John W. Russell's title to the land he transferred to Mr. Webber. (*Id.*)

## THE STANDARD OF REVIEW

"To survive a defendant's motion for a summary judgment, the plaintiff must establish a prima facie case for each element of [their] cause of action." *Bonin v. Crepeau*, 2005 ME 59, ¶ 8, 873 A.2d 346. "The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a

14

triable issue of fact or whether the question[s] before the court [are] solely . . . of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 44 (Me. 1995).

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact finder to choose between competing versions of the fact. *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774. The evidence offered to establish a dispute as to a material fact, submitted in opposition to a motion for summary judgment, "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland County,* 2013 ME 13, ¶ 19, 60 A.3d 759.

Summary judgment is also appropriate if, looking at the record in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, no reasonable juror could find for the non-moving party. *Id.* at ¶ 14 n. 3 *quoting Scott v. Harris*, 550 U.S. 372, 377 (2007). This is true "even when concepts such as motive or intent are at issue . . . if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Dyer. v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821

(quoting *Vives v. Fajardo*, 472 F.3d 19, 21 (1st Cir. 2007)); *Bouchard*, 661 A.2d at 1144-45 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted")). Accordingly, a "judgment as a matter of law in a defendant's favor is proper when any jury verdict for the plaintiff would be based on conjecture or speculation." *Stanton v. Univ. of Maine System*, 2001 ME 96, ¶ 6, 773 A.2d 1045; *see also Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 31, 796 A.2d 683 ("When there is so little evidence tending to show a critical element of a plaintiff's claim that the jury would have to speculate in order to return a verdict for the plaintiff, a defendant is entitled to summary judgment").

Motions for summary judgment must be supported by citations to record evidence of a quality that would be admissible at trial. *Levine*, 2001 ME 77, ¶ 6, 770 A.2d at 656 (citing M.R. Civ. P. 56(e)). Facts supported by record citations in a supporting or opposing statement of materials facts are deemed admitted unless properly controverted. M.R. Civ. P. 56(h)(4); *see also Farrell v. Theriault*, 464 A.2d 188, 194 (Me. 1983). Affidavits in support of motions for summary judgment must "be made on personal knowledge" ánd must "show affirmatively that the affiant is competent to testify to the matters stated therein." *Platz Associates v. Finley*, 2009 ME 55, ¶ 16, 973 A.2d 743 (quoting M.R. Civ. P. 56(e)).

16

## DISCUSSION

The parties do not dispute that the determination of whether the Plaintiffs have a public easement to access their land depends on the location of the Russell Place as used in the 1968 discontinuance vote, also known as the Frank Russell Buildings as used in the 1923 discontinuance vote. If the Russell Place/Frank Russell Buildings were on the Plaintiffs' land, there is no dispute that the Plaintiffs' have a public easement by operation of law. *See note 1, supra.* Likewise, if the Russell Place/Frank Russell Buildings were located on Defendant Pingree's land, there is no dispute that the Plaintiffs have no right to utilize the road beyond that point, as no public easement exists beyond that point.[6] *See note 2, supra.*

This court finds that there is a material issue of fact in dispute between the parties, namely, whether the Russell Place/Frank Russell Buildings as referenced in the 1968 and 1923 discontinuance votes by the Town of Avon, were located on land the Plaintiffs now own. The real question, in the court's view, is whether this factual issue in dispute is a "genuine" issue for trial. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

---

[6] The parties have not suggested any location for the Russell Place/Frank Russell Buildings other than the two mentioned above.

17

judgment . . . ."). The test is whether there is sufficient evidence supporting the claimed fact–that the Russell Place/Frank Russell Buildings are on the Plaintiffs' land–"to require a fact-finder to choose between competing versions of the truth at trial." *Inkel v. Livington,* 2005 ME 42, ¶ 4, 869 A. 2d 745.

By virtue of the Defendants' properly supported motion for summary judgment, the Plaintiffs were required to "establish a prima facie case for each element" of their causes of action. *Burdzel v. Sobus,* 2000 ME. 84, ¶ 9, 750 A. 2d 573. Critical to meeting that burden is the requirement that the Plaintiffs establish a prima facie case that the public easement resulting from the 1968 discontinuance vote extends to their land. In other words, the Plaintiffs must establish a prima facie case that the Russell Place/Frank Russell Buildings were located on their land. Failure of the Plaintiffs to establish such a prima facie case means that the Defendants are entitled to judgment as a matter of law because (1) the Plaintiffs would have no right to a declaration that they may travel across the Defendants' land as claimed in Count I, and (2) no public easement is being interfered with as claimed in Count II.

Although they do not bear the ultimate burden of proving where the Russell Place/Frank Russell Buildings were located–since they are not the complainants– the Defendants have produced a substantial amount of evidence strongly suggesting that those landmarks were located on land now owned by Defendant

18

Pingree. This includes evidence from the Lambert Survey of 1995 that places the Russell Buildings with "old cellar hole" found on Defendant Pingree's land. (Lochmann Aff., ¶ 9; Ex. 4 to Lochmann Aff.) Moreover, the location of Building No. 2 on the 1929 USGS map corresponds to the location of Building No. 22 on the Nurse Report map which, in turn, corresponds to the location of the "J. Irish" building on the 1861 USGS map, all of which is consistent with the location of the Russell Buildings as identified on the Lambert Survey.[7] (Lochmann Aff., ¶¶ 6-9; Ex.1, 2 & 3 to Lochmann Aff.; Nurse Aff., ¶ 5.) The Defendants have also presented admissible evidence from Mr. Bruce Dunham, a lifelong Avon resident and the former Town Constable who posted the notice of the annual town meeting in 1968. Mr. Dunham's affidavit supports the conclusion that the Russell Place as used in Article 34 of the warrant for the 1968 town meeting was understood to be referring to the location where the Russell Buildings are identified on the Lambert Survey. (Mr. Dunham Aff., ¶ 7.) Furthermore, Mr. Dunham is unaware of there ever being any "buildings," other than temporary logging camps, west of the Russell Place, near the Russell Beaver Pond, i.e., in the location where the Russell

---

[7] The Plaintiffs have challenged, on the basis of hearsay, the Affidavit of Andrea Masterman Nurse, and the Report on the history of the settlement of the Town of Avon that she prepared in June 1967. The Nurse Report, however, would appear to be admissible under M.R. Evid. 803(16) as statements in a document in existence 20 years or more, the authenticity of which has been established. The authenticity of the Nurse Report can be established under M.R. Evid. 901(b)(8). The Nurse Report would also appear to be admissible under M.R. Evid. 803(20), as reputation concerning boundaries and general history.

19

Buildings are identified on the Lambert Survey. (*Id.* ¶ 8.) This evidence puts the Russell Place/Frank Russell Buildings on property now owned by Defendant Pingree.

The Plaintiffs have responded by arguing that the Defendants have failed to show that Frank Russell ever owned the property within Defendant Pingree's land. The Plaintiff's point out that the 1945 deed conveying the premises the Defendants contend include the Frank Russell Buildings was granted by John, not Frank, Russell. (*See* Ex. 5 to Lochmann Aff.) The Defendants, for their part, have suggested that John, the son of Frank, inherited the land through intestate succession, under which no deeds were necessary for the property to descend from Jonathan Irish, to his daughter Nettie and her husband Frank Russell, to their son John. This suggestion finds support in the fact that the 1945 deed from John Russell to Evan Webber conveyed the "same premises as conveyed to Jonathan Irish by George Bennett, by deed dated November 7, 1855 . . . ." (*Id.*)

Most importantly, however, for purposes of ruling on the Defendants' motion for summary judgment, is the fact that the Plaintiffs have failed to provide even colorable evidence that the Frank Russell Buildings or the Russell Place were anywhere other than on Defendant Pingree's land, let alone on property they now own. The only evidence submitted by the Plaintiffs to support the proposition that the Russell Place or the Frank Russell Buildings were on their property, is the 1882

deed showing that Frank A. Russell had obtained a one-half interest in the east half of Lot 2, Range 4, the most southwesterly portion of what is now the Plaintiffs' land. The other half interest belonged to Sidney G. Haley. (Lochmann Aff., ¶ 14; Ex. 11 & 13 to Lochmann Aff. *See also* Cullenberg Aff., ¶ 5.) In 1910, Mr. Haley conveyed a full interest in the east half of Lot 2, Range 4 to Sadie D. Beal by deed, but there is no record of how Mr. Haley obtained Frank Russell's half interest in the land. (Lochmann Aff., ¶14.)

There is no evidence of any kind to support the conclusion that the one-half interest in the east half of Lot 2, Range 4, obtained by Frank Russell by deed in 1882, is or was the Russell Place or the Frank Russell Buildings, contemplated in the 1968 and 1923 discontinuance votes. Neither the 1882 deed nor the 1910 deed from Sidney Haley to Sadie Beal make any reference to any buildings. (*See* Ex. 11 & 12 to Lochmann Aff.) Furthermore, the USGS maps do not show any buildings on this land, and Mr. Dunham is unaware of any buildings, aside from temporary logging camps, existing west of the Russell Buildings on defendant Pingree's land, as shown on the Lambert Survey.

In short, the Plaintiffs have argued that since Frank Russell owned a one-half interest in the east half of Lot 2, Range 4 (which is on land the Plaintiffs now own) it is possible that a jury might find that the Russell Place/Frank Russell Buildings

21

were located there. In this court's view, however, any jury verdict in the Plaintiffs favor would be based on sheer speculation and guesswork.

The Law Court has made it clear that "[w]hen there is so little evidence tending to show a critical element of a plaintiff's claim that the jury would have to speculate to return a verdict for the plaintiff, a defendant is entitled to a summary judgment." *Beaulieu v. The Aube Corp.,* 2002 ME. 79, ¶ 31, 796 A. 2d 683. The mere possibility of success is not sufficient to avoid summary judgment. Summary judgment in a defendant's favor "is appropriate when any jury verdict for the plaintiffs would be based on conjecture or speculation." *Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C.,* 1998 ME. 210, ¶ 13, 718 A. 2d 186 (*quoting Fleming v. Gardner,* 658 A. 2d 1074, 1076 (Me. 1995)).

In this case, the Plaintiffs have not presented sufficient evidence "for a jury to return a verdict" in their favor and, accordingly, "there is no issue for trial." *Biette v. Scott Dugas Trucking & Excavation, Inc.,* 676 A. 2d 490, 494 (Me. 1996) (*citing Bouchard v. American Orthodontics,* 661 A. 2d 1143, 1144-45 (Me. 1995)).

## CONCLUSION

For the foregoing reasons, the court finds that there is no genuine issue of material fact and the Defendants are entitled to judgment as a matter of law.

The entry shall be:

> Summary judgment on Counts I and II of the Complaint is granted to the Defendants.

The Clerk is directed to incorporate this Order by reference in accordance with M.R. Civ. P. 79(a).

Dated: November 12, 2014

William R. Stokes
Justice, Maine Superior Court

23